# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MERIENNE BLAKE,

      Petitioner,

v.                                  Case No. 3:19-cv-746-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.
_____

## ORDER OF DISMISSAL WITH PREJUDICE

### I.    Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) on June 12, 2019 (mailbox rule). Because the Petition was unsigned, the Court directed Petitioner to file a signed amended petition. See Order (Doc. 2). Petitioner did so on July 29, 2019 (mailbox rule). See Amended Petition (Doc. 4). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for first degree murder and conspiracy to commit robbery. She is serving life imprisonment. Respondents filed a Response arguing that Grounds One, Three, and Four should be dismissed as

untimely, and Ground Two should be denied.[1] See Response (Doc. 6), with exhibits (Docs. 6-1 to 6-5; "Resp. Ex."). Although given an opportunity to reply, Petitioner declined to do so. See Petitioner's Notice (Doc. 8) (indicating she will rely on the assertions and claims as stated in the Amended Petition). This case is ripe for review.[2]

## II. Governing Legal Principles

### a. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct

---

[1] Grounds One, Three, and Four are ineffective assistance of trial counsel claims. Doc. 4 at 5, 8, 10. In Ground Two, Petitioner argues that newly discovered evidence shows her trial was fundamentally unfair due to a biased judge. Id. at 7.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### b. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions

3

as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

4

States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### c. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court

5

remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations modified).

6

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, 501 U.S. at 747-48; Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause

7

for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual

8

> innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### III. Analysis

#### a. Grounds One, Three, and Four

Following a jury trial, the state court entered judgment on January 9, 2014, sentencing Petitioner to life imprisonment. Resp. Ex. A at 165-71. Petitioner appealed, and the First District Court of Appeal per curiam affirmed Petitioner's judgment and sentence without a written opinion on April 17, 2015. Resp. Ex. H. The Mandate issued on May 5, 2015. Id.

Petitioner's judgment and sentence became final on July 16, 2015, which is 90 days after the First DCA's per curiam affirmance. See Clay v. United States, 537 U.S. 522 (2003); Close v. United States, 336 F.3d 1283, 1285 (11th

Cir. 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion." (citing Supreme Court Rule 13.3[3])). Petitioner's one-year limitations period ran for 292 days until it was tolled on May 4, 2016, when Petitioner filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. I at 1-12. She filed an amended Rule 3.850 motion on September 20, 2016. Id. at 14-20. The state filed a response. Id. at 25. The circuit court denied the Rule 3.850 motions on February 5, 2018. Id. at 26-35. Petitioner appealed, and the First DCA per curiam affirmed the denial without a written opinion and issued the mandate on March 25, 2019. Ex. L. The next day, March 26, 2019, Petitioner's one-year limitations period continued to run until its expiration on June 10, 2019.[4] Petitioner filed the Petition on June 12, 2019. Thus, Grounds One, Three, and Four are untimely.

---

[3] See Sup. Ct. R. 13.3 ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate.").

[4] Respondents calculate Petitioner's one-year limitations period as including 366 days, because 2016 was a leap year. The Court does the same, as it has no effect on the outcome. Adding 74 days to March 26, 2019, results in an expiration date of Saturday, June 8, 2019. Thus, the Court uses the following Monday, June 10, as the expiration date.

Petitioner does not address the untimeliness of her Petition, and she fails to present any circumstances suggesting that she would be entitled to equitable tolling. Nor does she make any showing of actual innocence. See McQuiggin v. Perkins, 569 U.S. 383, 386 (2013); Rozzelle v. Sec'y Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012). Considering the record, the Court finds that Grounds One, Three, and Four are due to be dismissed with prejudice as untimely.

### b. Ground Two[5]

Petitioner argues that "[n]ewly discovered evidence shows [her] trial was fundamentally unfair based on a biased judge." Doc. 4 at 7. She contends that she "was made aware of material evidence . . . on or about 8/2/2016 claiming formal charges were being brought against trial judge, Honorable Mark Hulsey, III." Id. She further contends that during her trial, she "was also made aware that Judge Hulsey was napping during oral arguments and told 'not to worry about it.'" Id.

---

[5] Respondents recognize that this claim is timely based on 28 U.S.C. § 2244(d)(1)(D) ("The limitation period shall run from the latest of--the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). See Doc. 6 at 14-18.

11

Petitioner raised this claim in her amended Rule 3.850 motion. See Resp. Ex. I at 16-17.[6] In making this argument, Petitioner did not cite to any legal authority. She argued that "[t]here exists a reasonable and substantive probability that [her] entire trial was fundamentally unfair and could reasonably be taken to put the whole case in such a different light as to undermine confidence in the entire proceeding, where all the odds were against [her] because she was female and both of her counsels[] were African American." Id. at 17. In response, the state argued that Petitioner "failed to allege any specific prejudice." Id. at 25. According to the state, Petitioner was required to "allege specific rulings or actions that this judge did that were improper and were based on his alleged racial and gender biases." Id. (citing Blackwood v. State, 946 So. 2d 960 (Fla. 2006)).

The postconviction court denied Petitioner's claim:

> In this Ground, Defendant alleges newly discovered evidence, citing formal charges brought against the trial judge who presided over Defendant's case for making derogatory emails about females and stating that all African Americans "should go get back on a ship and go back to Africa." Defendant states that as a female Defendant who proceeded to trial with two African American attorneys, one of which was also female, it was impossible for her to have received a fair trial before this trial judge. Defendant further asserts

---

[6] In her amended Rule 3.850 motion, Petitioner also raised a "cumulative error" claim based on the trial judge's alleged bias. See Ex. I at 18. Petitioner did not raise a cumulative error claim in the Amended Petition.

12

this evidence undermines the confidence in the outcome of the proceeding.

Under rule 3.850(b)(l), a claim of newly discovered evidence requires that the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence. Fla. R. Crim. P. 3.850(b)(l). Generally, to obtain a new trial based on newly discovered evidence, a defendant must show: (1) the evidence was not known by the court, the party, or counsel at the time of trial, and that the party nor counsel could have known of it through the use of diligence; and (2) the "evidence is of such nature that it would probably produce an acquittal on retrial." Hitchcock v. State, 991 So. 2d 337, 349 (Fla. 2008). Newly discovered evidence satisfies the second prong if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." Jones v. State, 709 So. 2d 512, 521 (Fla. 2009).

This Court recognizes that Defendant nor counsel could likely have known or ascertained this evidence at the time of trial. However, this Court does not find that the "evidence is of such nature that it would probably produce an acquittal on retrial.["]

The only pivotal pretrial Motion the trial court denied was Defendant's Motion to Dismiss based on Stand Your Ground laws. This Court finds such ruling was appropriate considering the evidence presented at the hearing. (Ex. J.) This Court also finds the result of the trial would not have been different despite another judge sitting due to the State's presentation of evidence at trial. Particularly, the State presented evidence that the victim and her codefendant, Enrique Pajaro ("Pajaro"), concocted a plan to steal crack cocaine and money from the victim after the victim showed up at Defendant's house and to get the victim to leave Defendant alone. (Ex. G at 225-233, 289-91, 299, 300-01, 302, 321, 324, 326, 351.) Indeed, prior to the attack,

13

> a friend of the co-defendants noted seeing a drawer with a long knife in it and a yellow mallet with a steel hammer on the counter that came from under the witness's kitchen sink. (Ex. G at 229-30.) Defendant acknowledged in her interview that she knew this was a premeditated attack and the attack of the victim began while the victim was passed out. (Ex. G at 297-98, 301-02, 304, 310, 324.) Defendant further admitted more than once that she brought the mallet to her codefendant while he was fighting with the victim, as well as hit the victim with the mallet a couple times before the co-defendant took it and started hitting the victim with it. (Ex. G at 173-74, 277, 286, 331, 341-42, 351-52.) The detective indicated that Pajaro gave a similar account. (Ex. G at 352.) However, Defendant and Pajaro lied initially and tried to claim the victim broke in and tried to hurt Defendant, so Pajaro was protecting her. (Ex. G at 173, 283-84, 308.) In light of the evidence presented, this Court finds there would be no acquittal even if there were a retrial with a different judge. Accordingly, Defendant is not entitled to relief.

Resp. Ex. I at 32-33. Petitioner appealed, and the First DCA per curiam affirmed without issuing a written opinion. Resp. Ex. L.

According to Respondents, Petitioner failed to present the federal nature of this claim to the state courts; thus, the claim is unexhausted. See Doc. 6 at 18-22. The Court agrees. Petitioner failed to cite or address any federal law in her Rule 3.850 motion or brief on appeal with respect to this claim. Her conclusion in her amended Rule 3.850 motion that she has proven that "she was denied her United States Constitutional rights" is insufficient. See generally Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457-59 (11th Cir. 2015). She did not place the state courts on notice that she was raising a federal claim, and

14

thus failed to exhaust this claim in state court, which renders this claim procedurally barred. Petitioner has not shown cause and prejudice to excuse the bar, nor has she shown a fundamental miscarriage of justice would result if this claim were not addressed on the merits. Accordingly, Ground Two is due to be denied.

Alternatively, Respondents assert that "even if Petitioner could be deemed to have fairly presented the state circuit and appellate courts with a federal claim, she still cannot demonstrate entitlement to relief." Id. at 22. Again, this Court agrees. Petitioner's argument in the state courts that the trial judge denied all of her pretrial motions and objections at trial is not supported by the record. While the trial judge denied Petitioner's pretrial motion to dismiss based on the Stand Your Ground law, such ruling was supported by the record.[7] And in light of the evidence presented at the trial, there is no reasonable probability that the outcome would have been different had another trial judge presided. Petitioner has failed to show that her trial was fundamentally unfair.

Petitioner's generic allegations in her Amended Petition show—at most—a potential appearance of bias. But "there is no Supreme Court decision clearly

---

[7] At the conclusion of the evidentiary hearing on Petitioner's stand your ground motion, the trial judge took the motion under advisement. See Ex. I at 266. There is no final ruling on the state court's docket, but given that Petitioner proceeded to trial, the motion was implicitly (if not overtly) denied.

15

establishing that an appearance of bias or partiality, where there is no actual bias, violates the Due Process Clause or any other constitutional provision." Hendrix v. Sec'y, Fla. Dep't of Corr., 527 F.3d 1149, 1153 (11th Cir. 2008); see Davis v. Jones, 506 F.3d 1325 (11th Cir. 2007) (denying the petitioner's federal habeas claim that his due process rights were violated because the judge was related to one of the prosecutors; reasoning that the mere appearance of bias is not enough to violate the Due Process Clause). Petitioner has failed to point to any part of the record to show the trial judge's alleged actual bias in her case. Additionally, the other claims in the Amended Petition focus on counsel's alleged errors—she does not raise any trial court error claims. Upon due consideration, Ground Two is due to be denied.

Accordingly, it is

**ORDERED**:

1. The Court dismisses as untimely Grounds One, Three, and Four and denies Ground Two. This case is **DISMISSED with prejudice**.

2. The **Clerk** shall enter judgment accordingly, terminate any pending motions, and close this case.

3. If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any

16

motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of July, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 6/17
c:
Merienne Blake, #J51496
Counsel of Record

---

[8] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

17